# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

    v.                                          Case No. 04-CR-260

JEBREEL A. YOUNG,

    Defendant.

## DECISION AND ORDER

On November 2, 2004, a federal grand jury in this district returned a four-count indictment against the defendant, Jebreel A. Young, charging him with various controlled substances offenses. Count One charges the defendant with knowingly and intentionally conspiring with others to distribute and possess with intent to distribute 50 grams or more of a mixture containing cocaine base, commonly known as crack, in violation of Title 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846, and Title 18 U.S.C. § 2. Counts Two and Three charge the defendant with knowingly an intentionally distributing cocaine and knowingly and intentionally possessing with intent to distribute cocaine, respectively, in violation of Title 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). Count Four charges the defendant with knowingly and intentionally distributing five grams or more of a mixture containing cocaine base, commonly known as crack, in violation of Title 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). The indictment also contains a forfeiture provision.

On March 9, 2005, the defendant appeared for an arraignment and entered a plea of not guilty. Pursuant to the pretrial scheduling order issued by the court, the defendant filed

a motion to suppress physical evidence and any fruits derived from such evidence. He requested an evidentiary hearing.

On April 27, 2004, the court held an evidentiary hearing. Racine Police Department Investigator Bruce Larrabee testified on behalf of the government. The parties also stipulated to certain facts prior to the hearing. Based upon the stipulation of the parties and the hearing testimony, the court enters the following findings of fact.

## **FINDINGS OF FACT**

On March 3, 2004, Investigator Eberle of the City of Racine Police Department (RPD) received information from a confidential informant that a black male was dealing drugs at Double D's Tavern in Racine, Wisconsin. The confidential informant advised that the individual was wearing a black skull cap and a white top. The informant also stated that Jebreel Young was seated next to the black male. Sgt. Boldus provided this information to officers who were doing bar checks on the near north side of Racine at the time.

RPD Investigator Bruce Larrabee, along with Officer Garcia, went to the Double D's Tavern at approximately 7:30 p.m. on March 3, 2004. The Double D's Tavern is located in a high crime area on the near north side of Racine. There is street crime, including prostitution in the area, and the police department also had received bar complaints. When Investigator Larrabee and Officer Garcia arrived at the tavern, five other officers were already inside. Investigator Larrabee observed that some of the officers were talking to Frank Mayweather, who matched the description of the individual given by the confidential informant. The officers had taken Mr. Mayweather aside and were talking to him. Investigator Larrabee observed the defendant Jebreel Young sitting at the bar. Given the informant's description, Mr. Mayweather was the target of the officers' investigation. The defendant was not the target.

Sergeant Boldus instructed the officers to check all the patrons in the tavern. Noone was allowed to leave the tavern. Inspector Larrabee knew of the defendant for about a year but had no specific knowledge of firearms use by the defendant. He was aware that there have been other investigations involving the defendant and that the defendant had a reputation for drug dealing. Investigator Larrabee observed the defendant get up from his seat and start walking around in the bar. He walked to the area where the officers were talking to and checking Mr. Mayweather.

Investigator Larrabee asked the other officers if anyone had checked the defendant. Investigator Larrabee focused on the defendant because no one else was dealing with him. Inspector Larrabee went to the defendant and told him to raise his arms. The defendant took the cigarette out of his mouth, walked over to the bar and placed the cigarette on the bar. He then raised his arms at Investigator Larrabee's request. Investigator Larrabee then conducted a pat-down search of the defendant.

According to Investigator Larrabee, the pat-down was conducted for officer safety. He thought it was possible the defendant might disarm the officers and he was also concerned about the possibility that the defendant had a weapon. Investigator Larrabee said he also patted down the defendant because it was a high crime area with drug complaints and the defendant was "next to a person involved in the drug activity." (Tr. 17).[1] According to Investigator Larrabee, the fact that he had information from past investigations that the defendant was involved with drug dealing and that the person seated next to him at the bar was dealing drugs raised the question of a possible relationship. However, Investigator Larrabee stated: "But in my mind, it was not the purpose of the pat-down search." (Tr. 33).

---

[1] Tr. refers to the transcript of the evidentiary hearing of April 27, 2005.

Pat-down searches were done on all people in the bar. Investigator Larrabee believed that all the patrons in the bar were patted down for the same reason the defendant was – officer safety. "We don't know if they're carrying weapons." (Tr. 29). Although he did not know for sure, Investigator Larabee said that warrant checks generally are conducted under these circumstances.

As Investigator Larrabee was conducting the pat-down search of the defendant, he felt a small soft lump in the defendant's left front pants pocket which was about the size of a small golf ball. He also felt a smaller hard lump which he believed was the knot of a small package. Investigator Larrabee asked the defendant if he had anything in his pocket and the defendant responded, "There is nothing in my pocket." (Stipulation). Investigator Larrabee attempted to go inside the defendant's pants pocket. The defendant tried to stop him. Another officer came to assist Investigator Larrabee. Investigator Larrabee told the defendant not to move and he complied. Investigator Larrabee then went into the defendant's pants pocket and retrieved a small package containing what he believed to be powder cocaine.

The defendant was placed under arrest and handcuffed. He was searched, and a smaller baggie containing a white powder was found in his right front pocket. An unused baggie was found in the defendant's jacket pocket, which was on a chair next to the bar. During the search incident to the defendant's arrest, officers seized a handwritten list containing several names with cell phone numbers and a cell phone.

## **ANALYSIS**

At the outset, the court notes that the parties filed stipulated facts and requested that the court decide the defendant's motion based solely on those facts. In a telephone conference with counsel, the court explained that the stipulated facts were insufficient for the

court to determine whether or not the pat-down search of the defendant was supported by probable cause or reasonable suspicion.

In this case, the stipulated facts presented no information about the reason for the pat-down of the defendant, other than that he was seated "directly adjacent" to where the suspected drug dealer was seated. No "specific and articulable facts" were presented from which this court could conclude that Investigator Larrabee had a "reasonable suspicion" that the defendant was armed or engaged in criminal activity. See Terry v.Ohio, 392 U.S. 1, 21 (1968). A person's "mere propinquity to others independently suspected of criminal activity . . . without more" is insufficient to create individualized reasonable suspicion to search that person." Ybarra v.Illinois, 444 U.S. 85, 91 (1979) (internal citation omitted); see also, United States v. Price, 184 F.3d 637, 641 (7th Cir. 1999).

Moreover, none of the circumstances surrounding the defendant's search, including the fact that all patrons were subjected to search, were included in the stipulated facts. In addition, an assessment of the credibility of witnesses often plays an important part in a motion to suppress. A credibility determination cannot be made on stipulated facts. In this case, necessary factual information was developed during the evidentiary hearing.

The defendant asserts that Investigator Larrabee lacked any reasonable belief that the defendant was armed and dangerous when he subjected him to a pat-down search at the Double D's Tavern. The defendant relies on Ybarra, 444 U.S. 85 (1979) to support his position. The government opposes the defendant's motion.

A pat-down search implicates the Fourth Amendment. Terry, 392 U.S. at 16-19. In conducting an investigatory stop, officers are required to have knowledge of "specific and articulable facts which, taken together with the rational inferences from those facts" could

- 5 -

cause them to conclude, in light of their experiences, that criminal activity was afoot. Terry, 392 U.S. at 21, 21 & 30; Alabama v White, 496 U.S. 325, 329-30 (1990).

Reasonable suspicion is to be determined in light of the totality of the circumstances. See e.g., United States v. Packer, 15 F.3d 654, 658 (7th Cir. 1994); United States v. Sokolow, 490 U.S. 1, 8 (1989). "Reasonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its degree of reliability." Alabama, 496 U.S. at 330. In assessing the reasonableness of an investigatory stop, the court should also consider whether the degree of intrusion was reasonably related to the known facts. United States v. Tilmon, 19 F.3d 1221, 1224 (7th Cir. 1994). Law enforcement officers may conduct a limited pat-down search of individuals subject to investigatory detention in order to determine whether the person is, in fact, carrying a weapon and to neutralize the threat of physical harm. Terry, 392 U.S. at 24-27.

In Ybarra, police obtained a search warrant to search a tavern and its bartender for heroin. When the search warrant was issued, the officers had no probable cause to believe that any person found in the tavern, aside from the bartender, would be violating the law. The officers entered the bar and announced that they were going to search everyone in it for weapons. The Court held that the search of the defendant violated the Fourth and Fourteenth Amendments. In reaching this conclusion, the Court noted that although the warrant gave the officers authority to search the premises and the bartender, it "gave them no authority to invade the constitutional protections possessed individually by the tavern's customers." Ybarra, 444 U.S. at 86. "A reasonable belief that a person is armed and presently dangerous must form the predicate to a pat-down of the person for weapons." Id.; see also, Adams v. Williams, 407 U.S. 143, 146 (1972); Terry, 392 U.S. at 21-24.

The Court asserted that nothing in Terry can be understood to allow a generalized cursory search for weapons. "The 'narrow scope' of the Terry exception does not permit a frisk for weapons on less than reasonable belief or suspicion directed at the person to be frisked, even though that person happens to be on premises where an authorized narcotics search is taking place." Ybarra, 444 U.S. at 94.

In this case, the officers entered the Double D's tavern based on the tip of an informant that a black male wearing a black skull cap and a white top was in the tavern dealing drugs. When the officers went to the tavern, Sergeant Boldus instructed them to pat-down all patrons in the bar. Noone was allowed to leave.

When the defendant got up from his seat and started walking around, Investigator Larrabee asked if anyone had checked the defendant. He then began to search the defendant. Investigator Larrabee knew the defendant and was aware that he had a reputation for drug dealing. Investigator Larrabee searched the defendant for the safety of the officers. However, he had no specific knowledge that the defendant used firearms. Officer safety was the stated reason that all the patrons were searched. Although Investigator Larrabee said he did a pat-down of the defendant because it was a high crime area with drug complaints and he was seated next to a person involved in drug activity, he also testified that these factors were not the reason for the pat-down search.

As in Ybarra, all the patrons in the tavern were subjected to a pat-down search. Although Investigator Larrabee knew the defendant and his reputation for drug dealing, the defendant gave no indication in the bar that he was armed. Nor did he evince any intent to assault or otherwise injure an officer in the tavern. The fact that the defendant walked near the officers who were interviewing Mr. Mayweather provides insufficient grounds to subject him

- 7 -

Case 2:04-cr-00260-CNC   Filed 05/12/05   Page 7 of 9   Document 22

to a pat-down search, especially since Investigator Larrabee had no knowledge that the defendant was involved with or used guns.

Investigator Larrabee testified that he thought the defendant might try to disarm an officer or might have a weapon. Such thoughts, without more, do not rise to the level of a reasonable suspicion that the defendant was armed and presently dangerous. Ybarra, 444 U.S. at 86; Adams, 407 U.S. at 146; Terry, 392 U.S. at 21-24.

The pat-down search of the defendant was part of the overall directive to conduct pat-down searches on all the patrons in the tavern. The hearing testimony established that immediately upon entering the tavern, Sergeant Boldus instructed the officers to pat-down all patrons. Everyone was subjected to a pat-down search for the same reason – officer safety. However, there was no indication that any of the patrons were considered to be armed and potentially dangerous. In Ybarra, the Court stated that authority based on a warrant to search a particular person or premises "gave [officers] no authority to invade the constitutional protections possess individually by the tavern's customers." 444 U.S. at 86.

Based on the evidence presented at the hearing, the court concludes that the search of the defendant was not supported by a reasonable belief that the defendant was armed and dangerous. Ybarra, 444 U.S. at 92-93. Therefore, this court recommends that the United States district judge enter an order granting the defendant's motion to suppress physical evidence and any fruits derived from such evidence. (Docket #10).

## **CONCLUSION**

**NOW, THEREFORE, IT IS RECOMMENDED** that United States District Judge Charles N. Clevert enter an order **granting** the defendant's motion to suppress physical evidence and any fruits derived from such evidence. (Docket # 10).

Your attention is directed to 28 U.S.C. § 636(b)(1)(B) and (C) and General Local Rule 72.3 (E.D. Wis.), whereby written objections to any recommendation herein or part thereof may be filed within five days of service of this recommendation, based upon with the agreement of the parties.  Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures.  Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge assigned to the case.  Failure to file a timely objection with the district court shall result in a waiver of your right to appeal.

Dated at Milwaukee, Wisconsin, this 12th day of May, 2005.

                                          BY THE COURT:

                                          s/Patricia J. Gorence
                                          PATRICIA J. GORENCE
                                          United States Magistrate Judge